Exhibit J

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| TONJA B. CARTER, in her capacity as Personal Representative of THE ESTATE OF NELLE HARPER LEE, | } } } } |
| PLAINTIFF, | } } |
| vs. | }    **Case No. 1:18-CV-117-WS-B** |
| RUDINPLAY, INC., | } } } |
| DEFENDANT. | } |

**DEFENDANT RUDINPLAY, INC.'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Defendant Rudinplay, Inc. ("Rudinplay"), respectfully requests that the Court dismiss the Amended Complaint (Doc. No. 12, the "Am. Compl.") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404.

**PRELIMINARY STATEMENT**

Rudinplay, a New York-based theatrical production company, entered into an agreement (the "Agreement," Am. Compl. Ex. A) by which it acquired the rights to adapt Harper Lee's novel, *To Kill a Mockingbird* (the "Novel"), into a live stage play (the "Play"). The Play currently is scheduled to premiere on Broadway, in New York, the Agreement is governed by New York law, and the negotiations concerning the Agreement were conducted entirely between Rudinplay's representatives in New York and Ms. Lee's representatives in New York and London. At no point did Rudinplay or its representatives negotiate the terms of the Agreement

with anyone in the State of Alabama or take any action by which it purposefully availed itself of the privilege of conducting activities within this State.

Nevertheless, Plaintiff, who alleges that she is the Personal Representative of the late Ms. Lee's Estate, purports to hale Rudinplay into a foreign forum, apparently because Ms. Lee was a resident of Alabama prior to her death. The law is clear, however, that the mere "existence of a contractual relationship between a nonresident defendant and [an Alabama] resident" is not sufficient to subject a defendant to personal jurisdiction in this forum, *see Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1113 (11th Cir. 1990) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 478 (1985)), and the mere fact that Rudinplay entered into an agreement with Ms. Lee cannot justify the exercise of personal jurisdiction over Rudinplay here.

Rather, for the exercise of personal jurisdiction over a defendant to comply with Constitutional requirements of due process, the defendant's contacts with the forum State must involve some act by which the defendant *purposefully availed* itself of the privilege of conducting activities within the forum, and must be to an extent that the defendant should reasonably anticipate being haled into court in this State. In assessing whether a contractual relationship can give rise to jurisdiction, a Court must consider factors such as "prior negotiations and contemplated future consequences, [and] the terms of the contract and the parties' actual course of dealing . . . ." *Burger King*, 471 U.S. at 479. All of these factors mandate against the exercise of personal jurisdiction against Rudinplay, which negotiated a contract and dealt exclusively with individuals based in New York and London, in connection with an agreement governed by New York law, for a play that is to be performed in New York.

Indeed, the *only* contact between Rudinplay and Alabama alleged in the Amended Complaint is that, after the agreement was executed (and after Ms. Lee passed away),

Rudinplay's principal, Scott Rudin, had a single telephone call with Plaintiff while Plaintiff was in Alabama.  Again, the law is clear that a single telephone contact with someone in the forum state is not sufficient to demonstrate that a defendant, in entering into a contract, purposefully availed itself of the privilege of conducting activities within the forum.  This is particularly true given that, at the time the agreement was entered into with Ms. Lee, Plaintiff was not a party, and Mr. Rudin did not even know that Plaintiff existed—Rudinplay could not have "purposefully availed" itself of an Alabama forum simply because an individual, unknown to Rudinplay at the time of contracting, subsequently took action from this State.

Perhaps recognizing these fatal deficiencies in her theory of personal jurisdiction, Plaintiff resorts to mischaracterizing the Agreement and the parties' dealings thereunder.  For example, Plaintiff alleges that, at one point, Rudinplay sent a check "payable to Ms. Lee" (Am. Compl. ¶ 22)—implying that this payment was mailed to Alabama.  In fact, as Plaintiff well knows, the payment in question was mailed not to Alabama, but rather to Ms. Lee's literary agent in London—consistent with the fact that all of Rudinplay's dealings were with Ms. Lee's representatives in New York and London.

Plaintiff also alleges that Rudinplay "agreed that there would be an annual professional performance of the Play in Monroeville, Alabama . . . ." (Am. Compl. ¶ 14).  This too is misleading.  In fact, the provision of the Agreement in question recognized required that the playwright, Aaron Sorkin (who is not a defendant) would have the right to grant stock and amateur licensing rights in the Play, and provided that Mr. Sorkin acknowledge that a production would take place in Monroeville and agree that he would *not* license a competing production within sixty miles of Monroeville.  The purpose and effect of this provision was to protect a production of *To Kill a Mockingbird*, produced by a nonprofit that Ms. Lee created, from

competition.  Rudinplay would have no involvement with any Alabama production.  Obviously,

a provision *precluding* the playwright from licensing an amateur production in Monroeville does

not constitute *purposeful availment* of an Alabama forum on the part of Rudinplay.

Because this Court lacks personal jurisdiction over Rudinplay, the Amended Complaint

should be dismissed.  If the Court declines to do so, however, Rudinplay request that the Court

transfer venue to the Southern District of New York, which is the appropriate forum for this

dispute, pursuant to 28 U.S.C. § 1404(a).  The factors that courts consider in weighing a transfer

motion—including the locus of operative facts, the convenience of witnesses, the forum's

familiarity with the governing law, and trial efficiency and the interests of justice—either favor

transfer to New York, or are neutral.  Indeed, the Play itself is scheduled to be performed not in

Alabama, but rather New York.  As set forth in greater detail herein, even the exercise of

jurisdiction over Rudinplay were appropriate—and it is not—New York is plainly a more

convenient and appropriate forum, and this action should be transferred in the interest of justice.

### STATEMENT OF FACTS RELEVANT TO THE MOTION[1]

#### A. Defendant Rudinplay Has No Relationship To the State of Alabama.

Rudinplay is a New York-based theatrical production company with its principal place of

business in New York, New York.  (Am. Compl. ¶ 3; Rudin. Decl. ¶¶ 3-4).  Rudinplay's

principal is the well-known theatre and film producer, Scott Rudin, who lives and works in New

York. (Rudin Decl. ¶¶ 2-4).  Neither Rudinplay nor Mr. Rudin individually has any relationship

to or maintains any presence or contacts in Alabama.  Rudinplay is not registered to do business

in this State; it does not have offices, employees, a telephone listing, or a physical mailing

address in Alabama; it does not maintain assets, bank accounts, or own or lease any property in

---

[1] The facts set forth in support of Defendant's motion to dismiss are taken from the Amended Complaint, the Declaration of Scott Rudin ("Rudin Decl.") dated April 6, 2018, attached hereto, and the Declaration of Stefan Schick ("Schick Decl.") dated April 9, 2018, attached hereto.

Alabama; and it has never availed itself of Alabama's laws or courts. (*Id.* ¶¶ 2-8). To the best of his knowledge, Mr. Rudin has never even been in Alabama. (*Id.* ¶ 5).

### B. Rudinplay Enters Into the Agreement, Which Is Negotiated with Harper Lee's Representatives in New York and London, Not in Alabama.

Effective as of June 29, 2015, Rudinplay and Harper Lee entered into a letter agreement, by which Rudinplay acquired from Ms. Lee certain rights to adapt Ms. Lee's 1960 novel *To Kill A Mockingbird* into a live stage play, to premiere on either Broadway in New York or the West End of London. (Am. Compl. ¶ 9; Rudin. Decl. ¶ 9; Agreement ¶ 4).

While Plaintiff alleges that Ms. Lee was a resident of Monroe County, Alabama, until her death in February 2016 (Am. Compl. ¶ 2), Rudinplay did not deal directly with Ms. Lee, who was eighty-nine years old at the time the Agreement was finalized.[2] Rather, the Agreement was negotiated between Mr. Rudin and his New York-based attorney, Seth Gelblum, on the one hand, and Ms. Lee's New York-based attorney, Timothy O'Donnell, and her London-based literary agent, Andrew Nurnberg, on the other. (Rudin Decl. ¶¶ 10-11; Schick Decl. ¶ 4). Indeed, the letter agreement itself is addressed to Ms. Lee "c/o Andrew Nurnberg Associates International" in the United Kingdom. (Am. Compl. Ex. A). At no time during the negotiation or execution of the Agreement did any of Rudinplay's agents or representatives set foot in Alabama or negotiate with anyone in Alabama. (Rudin Decl. ¶ 11; Schick Decl. ¶ 5).

The Agreement granted Ms. Lee the right to approve Rudinplay's selection of the playwright for the Play, providing that "the written approval of the Playwright by the Author is a condition precedent to any grant of rights to [Rudinplay]." (Agreement ¶ 1). Rudinplay procured Aaron Sorkin—one of the leading theater, film, and television writers in America—as the playwright. (Rudin Decl. ¶ 13; Am. Compl. ¶ 21). Rudinplay submitted Mr. Sorkin's name

---

[2] https://en.wikipedia.org/wiki/Harper_Lee

and CV to Mr. Nurnberg in order to obtain approval of Mr. Sorkin as playwright. (Rudin Decl. ¶ 13).

Following the approval of Mr. Sorkin as playwright, on November 4, 2015, Rudinplay made a payment of $100,000 to Ms. Lee, pursuant to paragraph 3(a) of the Agreement. (Am. Compl. ¶ 22). Consistent with the fact that all of Rudinplay's dealings were with Ms. Lee's representatives in New York and London, the check was not sent to Ms. Lee directly; rather, Mr. Gelblum, Rudinplay's New York attorney, sent the check to Mr. Nurnberg, in London. (Rudin Decl. ¶ 14; Schick Decl. ¶ 6).

### C. Following Ms. Lee's Passing, Plaintiff Files Suit a Mere Nine Months Before the Play's Scheduled New York Premiere, Alleging That a Draft of the Script Departs From the "Spirit" of the Novel

Ms. Lee passed away on February 19, 2016. Plaintiff alleges that, following Ms. Lee's passing, she was appointed as the Personal Representative of Ms. Lee's Estate. (Am. Compl. ¶¶ 1). Plaintiff is a citizen of Monroe County, Alabama. (*Id.*)

Plaintiff only became involved after Ms. Lee's death and played no role in the negotiation or execution of the Agreement. (Rudin Decl. ¶ 12). In fact, because Plaintiff had no involvement in this process whatsoever, Mr. Rudin had never even heard Plaintiff's name at the time Rudinplay contracted for the live stage rights to the Novel. (*Id.*).

Throughout 2016 and 2017, Mr. Sorkin drafted the script for the Play in his office in Los Angeles, California. (Rudin Decl. ¶ 15). On August 24, 2017, Rudinplay sent a draft of Mr. Sorkin's script to Mr. Nurnberg in London. (*Id.*). Plaintiff alleges that she first saw a draft of the Play's script in mid-September 2017 (Am. Compl. ¶ 30), indicating that Mr. Nurnberg waited nearly a month before sharing the script with her.

During the month of September 2017, Mr. Rudin had a number of communications with Mr. Nurnberg, in London, concerning the Play and the draft script. (Am. Compl. ¶¶ 28-29, 31;

Rudin Decl. ¶ 16).  Mr. Rudin and Plaintiff also spoke briefly by phone on a single occasion on

September 25, 2017, followed by several more emails between Mr. Rudin and Mr. Nurnberg.

(Am. Compl.¶¶ 32-34; Rudin Decl. ¶ 16).

On February 16, 2018, Mr. Rudin met with Plaintiff and Mr. Nurnberg—in New York—

to discuss the script.  (Am. Compl. ¶ 36; Rudin Decl. ¶ 17).  Subsequently, on March 5, 2018,

Plaintiff sent a letter to Mr. Rudin, claiming that the script "depart[s] from the spirit of the Novel

[and] alter[s] . . . its characters," ostensibly in violation of paragraph 12 of the Agreement.  (Am.

Compl. ¶ 38).  Shortly thereafter, on March 13, 2018, Plaintiff filed her initial complaint in this

action, alleging that the Play departs from the "spirit" of the Novel in various ways, and

impermissibly alters the characters of Atticus Finch, Calpurnia, Tom Robinson, Jem Finch and

Scout Finch.  (Doc. No. 1 ¶ 44).  Just three weeks later, Plaintiff amended her complaint,

abandoning many of these claims and alleging that the Play only "alters" two characters—

Atticus and Jem—and that the depiction of legal proceedings against Tom Robinson "departs

from the spirit of the Novel" in some unspecified way.  (Am. Compl. ¶ 44).

While Rudinplay strongly disputes Plaintiff's allegations that the Play departs from the

spirit of the Novel or alters its characters in any impermissible way, Rudinplay notes that

Plaintiff's allegations are based entirely on an interim draft script, and not on the live stage

production itself.  The Play is defined in the Agreement as the live stage production (Agreement

¶ 1), and it is the live stage production, not a script, that may not derogate or depart from the

spirit of the Novel or alter the characters.  The Play is currently planned to premiere on

Broadway on December 13, 2018—the Play has been cast, the cast and a general management

company have been contracted, and a Broadway theater has been reserved.  (Rudin Decl. ¶ 18).

The Play has been, and will continue to be, developed, rehearsed, and produced entirely in New York. (*Id.*).

## ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER RUDINPLAY.

Plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction over Rudinplay. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). To meet her burden, Plaintiff must allege sufficient material facts to establish the basis for the Court's jurisdiction. *See Future Technology Today, Inc., v. OSF Healthcare Systems, Inc.*, 218 F.3d 1247, 1249 (11th Cir. 2000); *United Techs. Corp.*, 556 F.3d at 1274. Only if the plaintiff makes a *prima facie* showing of personal jurisdiction does the burden shift to the defendant to present evidence demonstrating that the due process requirements of the Constitution are not met. *See id.*

In deciding a motion to dismiss for lack of personal jurisdiction, the allegations in the complaint are accepted as true only to the extent that they are not directly controverted by the defendant's evidence. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where a non-resident defendant has challenged jurisdiction through affidavit evidence, the burden shifts back to the plaintiff to present admissible evidence establishing a basis upon which personal jurisdiction over the defendant may be obtained.[3] *United Techs. Corp.*, 556 F.3d at 1274; *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th

---

[3]  Plaintiff's conclusory allegation that this Court has personal jurisdiction over Rudinplay "because the claim asserted in this [Amended] Complaint arises out of and relates to Rudinplay's contacts with the State of Alabama, and Rudinplay purposely availed itself of the privilege of conducting activities within the State of Alabama" (Am. Compl. ¶ 5) cannot itself support an exercise of personal jurisdiction over Rudinplay, as it does not contain any factual allegations. *See United Techs. Corp.*, 556 F.3d at 1274 (plaintiff must allege sufficient facts to make out prima facie case of jurisdiction).

Cir. 2006) (where defendant "submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction").

Here, the assertion of personal jurisdiction over Rudinplay by this Court would violate Rudinplay's due process rights under the Fourteenth Amendment.[4] Due process requires that (1) a defendant have "certain minimum contacts" with the forum and (2) the Court's exercise of jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *E.g.*, *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Minimum contacts may arise out of either specific jurisdiction (i.e., defendant's activities in the forum that are related to the cause of action alleged in the complaint) or general jurisdiction (i.e., a defendant's contacts with the forum that are unrelated to the cause of action). *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000).

As explained below, Plaintiff has not pleaded facts showing that either general or specific jurisdiction exists over Rudinplay. Indeed, neither general or specific jurisdiction is present.

## A.   This Court Lacks General Jurisdiction Over Rudinplay.

General jurisdiction arises only under very limited circumstances that are not present here. As the Supreme Court recently recognized, general jurisdiction is proper over a corporation only where "the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (same). For a corporation, "the place of incorporation and principal place of

---

[4] Because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, the long-arm statute analysis and due process analysis merge, and the issue before the Court is simply whether the exercise of jurisdiction over Rudinplay would violate due process. *See, e.g.*, *Mutual Service Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004); *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000).

business are 'paradig[m] … bases for general jurisdiction.'" *Daimler AG*, 134 S. Ct. at 760 (citation omitted).   Only in an "exceptional" case might a corporation's operations in a forum other than its formal place of incorporation or principal place of business "be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.   As the Supreme Court held in *Daimler AG*, even a formulation that would "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping." *Id.* at 760-61 (quotation omitted).

Rudinplay, a New York corporation with its principal place of business in New York (Am. Compl. ¶ 3), is not "home" in Alabama.   Not only is Rudinplay not domiciled in Alabama, it is not even registered to do business in Alabama.   Rudinplay does not have offices, employees, a telephone listing, or a physical mailing address in Alabama, and does not maintain assets, bank accounts, or own or lease any property in Alabama.   (Rudin Decl. ¶¶ 2-8).   Accordingly, Rudinplay does not begin to approach the exceedingly high threshold necessary for the exercise of general jurisdiction.

**B. This Court Lacks Specific Jurisdiction Over Rudinplay.**

This Court also lacks specific jurisdiction over Rudinplay.   To support specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: (1) they must be related to the plaintiff's cause of action or have given rise to it; (2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) they must be such that the defendant should reasonably anticipate being haled into court in the forum.   *See, e.g., Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *Matthews v. Brookstone Stores*, 469 F. Supp. 2d 1056, 1062 (S.D. Ala. 2007).   "Random, fortuitous or attenuated contacts, or contacts produced through the unilateral activity of a third

person are insufficient to reasonably indicate to the defendant that he should anticipate being subject to personal jurisdiction of the forum state's courts." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, Plaintiff has not met her burden to plead facts demonstrating that Rudinplay purposefully availed itself of the privilege of conducting activities within Alabama. Moreover, the evidence submitted in Mr. Rudin and Mr. Schick's Declarations clearly controverts Plaintiff's allegations.

It is firmly established that the mere "existence of a contractual relationship between a nonresident defendant and [an Alabama] resident is not sufficient in itself to meet the requirements of due process." *Jet Charter Serv., Inc.*, 907 F.2d at 1113 (citing *Burger King*, 471 U.S. at 462); *see also, e.g., Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, No. 16-17798, 2018 U.S. App. LEXIS 2702, at *8 (11th Cir. Jan. 31, 2018) (finding no personal jurisdiction over nonresident and holding that "an out-of-state defendant's merely entering into a contract . . . with a forum resident is insufficient to pass the minimum contacts test"); *Jackson, Key Practice Solutions, LLC v. Sullivan*, C.A. 15-0483-WS-B, 2015 U.S. Dist. LEXIS 169140, at *12-13 (S.D. Ala. Dec. 18, 2015) ("[I]t is settled that entering [into] a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test.") (Steele, J.) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010)). Consequently, the mere fact that Rudinplay entered into a contract with Ms. Lee is insufficient to support the exercise of personal jurisdiction over Rudinplay.

Rather, in assessing whether a contractual relationship can give rise to specific jurisdiction, the Supreme Court has "emphasized the need for a 'highly realistic' approach,"

which recognizes that a "contract" is but an intermediate step to the real object of a business transaction. *Burger King*, 471 U.S. at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)).   A court must thus focus on factors such as "prior negotiations and contemplated future consequences, [and] the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*; *see also, e.g.*, *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 811 (11th Cir. 2010) (same); *Jackson, Key Practice Solutions*, 2015 U.S. Dist. LEXIS 169140, at *13 (same).   None of those factors support the exercise of personal jurisdiction here.

First, the negotiation of the Agreement was exclusively conducted between Rudinplay's agents in New York, and Ms. Lee's representatives in New York and London.   Rudinplay never negotiated directly with Ms. Lee (who was eighty-nine years old at the time).   (*See supra* at 5). Courts in this Circuit have declined to exercise personal jurisdiction over non-resident defendants in breach of contract cases where contract negotiations did not take place in the forum state.   *E.g.*, *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994) (holding defendant's "conduct does not rise to the level of purposeful availment of the privileges of doing business in Georgia or the protections of Georgia's laws" where "there were no direct negotiations or other dealings" in the forum); *see also Jet Charter Serv.*, 907 F.2d at 1113 (finding defendant's contract-based contacts with Florida insufficient to support personal jurisdiction even though the defendant twice travelled to Florida, in connection with negotiations and to attend the transaction's closing); *PVC Windoors, Inc.*, 598 F.3d at 812 (fact that negotiations took place "in part in Florida" insufficient to support personal jurisdiction).

Second, although some contracts contemplate a future relationship with the forum state that is sufficiently ongoing and substantial to suggest that a non-resident party to a contract

purposely availed itself of the resident's forum, the contractual agreement here plainly does not contemplate that Rudinplay would have such a relationship with Alabama. Rather, the parties entered into an isolated transaction for a one-time grant of rights from Ms. Lee to Rudinplay. This limited exchange is not sufficient to support an exercise of personal jurisdiction. For example, in a case involving a one-time contract for legal representation, the Eleventh Circuit held that the law firm and attorney defendants were not subject to personal jurisdiction in Georgia, even though the client was based in Georgia, at least two case-strategy meetings took place in Georgia, and there were telephone calls, emails, and faxes between the plaintiff in Georgia and the defendants. *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, No. 16-17798, 2018 U.S. App. LEXIS 2702, at *9 (11th Cir. Jan. 31, 2018). Similarly, in *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, the Eleventh Circuit held that the district court lacked personal jurisdiction over the defendant where the principal contact was a single transaction for goods manufactured in the forum state under a contract negotiated outside of the forum, observing that "the binding precedent in this circuit indicates that a purchaser in an isolated transaction may not be subject to personal jurisdiction in a seller's state merely because the manufacturer performed its duties under the contract there." 786 F.2d 1055, 1063 (11th Cir. 1986); *see also Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir. 1986) (defendant did not purposely avail itself of Florida by seeking plaintiff's assistance "in a one-shot operation"—even though "some in-Florida preparation" for performance by the plaintiff was "perhaps foreseeable" by the defendant).

In *Burger King*, the Supreme Court described the type of ongoing, substantial relationship that can render a contract a "contact" for specific jurisdiction purposes, finding that a Burger King franchisee was subject to personal jurisdiction in Florida (where Burger King was

headquartered) when the franchisee "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." 471 U.S. at 480. Among other things, the contract "called for the franchisee to deliver all payments of all required fees and all required notices to the franchisor in Miami, Florida," and "provided that the franchisee's operations and inspections would be subject to extensive regulations and inspections ultimately controlled by the Miami headquarters . . . ." *Jet Charter Serv.*, 907 F.2d at 1113 (citing *Burger King*, 471 U.S. at 480). This Agreement, in contrast, does not call for any remotely comparable continuing relationship between Rudinplay and Alabama. *See Jet Charter Serv.*, 907 F.2d at 1113 (distinguishing *Burger King* and finding defendant's contract-based contacts with Florida insufficient to support personal jurisdiction even though the defendant agreed to provide a letter of credit in favor of a Florida entity and twice travelled to Florida, in connection with negotiations and to attend the transaction's closing).

Third, the terms of the Agreement do not suggest that Rudinplay "purposefully availed" itself of the privilege of conducting activities within Alabama, much less that it should have reasonably anticipated being haled into an Alabama court. To the contrary, the Agreement contains a choice of law provision wherein the parties agreed that New York law would govern. (Agreement ¶ 16). Courts in this Circuit analyzing personal jurisdiction in the context of contractual relationships have found the existence of such choice of law provisions to be significant and have concluded that the parties' election of the law of a different forum weighs against a finding of personal jurisdiction. *See, e.g.*, *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 995 (11th Cir. 1986) ("By its own terms the contract is to be governed by the law not of Florida, but of England. In a case involving parties of presumably equal bargaining power, the choice of English law to govern the agreement is in itself an

indication that [defendant] did not avail itself of the benefits and protections of Florida law.");
*Johnston v. Frank E. Basil, Inc.*, 802 F.2d 418, 420-21 (11th Cir. 1986) (defendants did not subject themselves to jurisdiction in Alabama under a contract that "expressly states that the parties intend to be governed, not by Alabama law, but by the law of the place of employment"); *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, 926 F. Supp. 1106 (N.D. Ga. 1996) (reasoning that the parties' decision to select Massachusetts law in their contract weighed against a finding of personal jurisdiction over the defendant in Georgia); *cf. Burger King*, 471 U.S. at 482 (Florida choice-of-law provision, combined with 20-year interdependent relationship defendant established with Burger King's Miami headquarters, "reinforced his deliberate affiliation with the forum state").

Fourth, the parties' actual course of dealing under the Agreement does not support the exercise of jurisdiction in Alabama. Prior to Ms. Lee's death, Rudinplay and its agents dealt exclusively with Ms. Lee's representatives in New York and London (*see supra* at 5). Plaintiff does not allege any telephone calls, correspondence, or other communications with Ms. Lee in Alabama.

Plaintiff, instead, alleges that after the Agreement had been fully negotiated and executed, and after Ms. Lee's death, Mr. Rudin had a telephone conversation with Plaintiff while she was in Monroeville, Alabama. (Am. Compl. ¶ 32). But a single telephone call with someone in Alabama cannot convert an isolated transaction concerning a straightforward intellectual-property license into the sort of complex, ongoing contractual relationship that could justify haling Rudinplay into a foreign court. *See, e.g., Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (no personal jurisdiction arising out of "one-time service" contract despite one telephone call into the state); *Aeropower, Ltd. V.*

*Matherly*, 511 F. Supp. 2d 1139, 1155-56 (M.D. Ala. 2007) (no personal jurisdiction; mere "telephone, fax, mail and wire communications" between the non-resident defendants and the forum plaintiff did not satisfy minimum contacts requirement); *Maximum Efficiency Squared, LLC v. Samsara Works Corp.*, No. 2:14-cv-01214-MHT-PWG, 2015 U.S. Dist. LEXIS 113803, at *21 (M.D. Ala. July 31, 2015) (finding no personal jurisdiction and observing that "telephone communications themselves are not *per se* evidence of purposeful availment").

In any case, at the time that Rudinplay entered into the Agreement with Ms. Lee, Mr. Rudin did not even know who Plaintiff was, and certainly did not communicate with her in any way, much less regarding the Agreement itself. Mr. Rudin only became aware of Plaintiff's existence after Ms. Lee's death. Rudinplay could hardly have purposely availed itself of Alabama based on the fact that Plaintiff—whose involvement began well after the Agreement was negotiated—lives in Alabama. *See Jackson, Key Practice Solutions*, 2015 U.S. Dist. LEXIS 169140, at *13 ("The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum.") (quoting *Diamond Crystal*, 593 F.3d at 1268) (emphasis in original). Simply put, Rudinplay is not bound to the forum of Ms. Lee's successor-in-interest.

Perhaps recognizing that there is no legitimate basis for the exercise of personal jurisdiction over Rudinplay in Alabama, Plaintiff resorts to mischaracterizations of the Agreement and the parties' dealings thereunder. For example, Plaintiff alleges that "Rudinplay sent a check dated November 4, 2015, for $100,000 payable to Ms. Lee" (Am. Compl. ¶ 22), implying that this payment was mailed to Alabama. In fact, consistent with the fact that all of Rudinplay's dealings were with Ms. Lee's representatives in New York and London—all

16

payments made by Rudinplay were sent to Ms. Lee's literary agent *in the United Kingdom*—not to Alabama. (*See* Rudin Decl. ¶ 14; Schick Decl. ¶ 6). And even if Rudinplay had made a payment directly to Plaintiff in Alabama, courts in this Circuit have refused to place any significant weight on payments for personal-jurisdiction purposes. *See Jackson, Key Practice Solutions*, 2015 U.S. Dist. LEXIS 169140, at *17-18, 23 (no personal jurisdiction even though contract required defendant to make monthly installment payments to Alabama company over a period of 60 months); *Allegiant Physicians Servs.*, 926 F. Supp. at 1116 (dismissing as insignificant the fact that defendant made "regular payments to Plaintiff in Georgia as evidence that Defendant Hospital purposefully availed itself of the forum" and noting that the Eleventh Circuit "places little weight on the mailing of payments to the forum state").

Plaintiff also alleges that "Rudinplay expressly agreed that there would be an annual professional performance of the Play in Monroeville, Alabama . . . ." (Am. Compl. ¶ 14). This too is misleading. The Agreement provided that Rudinplay would procure a playwright (Mr. Sorkin), and that Rudinplay would produce the initial first class production of the Play, either on Broadway or in the West End of London. (Agreement ¶¶ 1, 4). Thereafter, as in a standard theatrical agreement, the right to license stock and amateur productions of the Play would be exercised by the playwright—not Rudinplay. (*See* Schick Decl. ¶ 8).

The Agreement required that the *playwright* (ultimately, Mr. Sorkin) agree that any grant of stock or amateur licensing rights be contingent on (i) an annual professional production in Monroeville, Alabama, and (ii) a corresponding *prohibition* against the playwright licensing any performance of the Play within sixty (6) miles of Monroeville, or granting a license to the Monroe County Museum. (Agreement ¶ 2(a)). The evident purpose of this provision was to permit a production of *To Kill a Mockingbird*, produced by a nonprofit that Ms. Lee created, to

17

proceed without competition.[5]  Rudinplay itself would have no involvement in such production; indeed, far from requiring Rudinplay to produce the Play in Alabama, the provision in question *prohibits* Sorkin (not Rudinplay) from licensing any production in Monroeville.  That Plaintiff must resort to arguing that this provision somehow constitutes purposeful availment of an Alabama forum by *Rudinplay* demonstrates that Plaintiff's theory of personal jurisdiction is without merit.

## II.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(A).

If the Court declines to dismiss this matter for lack of personal jurisdiction over Rudinplay, it should nevertheless transfer the case to the Southern District of New York, which is a more convenient forum.  Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…."

At the outset, the Court must evaluate two threshold requirements: (1) "whether the action could originally have been brought in the proposed transferee forum," and (2) "whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case." *First Fin. Bank v. CS Assets, LLC*, No. 08-0731-WS-M, 2009 U.S. Dist. LEXIS 37885, at *5-6 (S.D. Ala. May 4, 2009); *see Lasalle Bank N.A. v. Mobile Hotel Props., LLC*, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003).  "A motion to transfer under § 1404(a) thus calls on the district court to make an individualized, case-by-case determination based on principles of fairness and convenience." *Lasalle*, 274 F. Supp. 2d at 1301 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

---

[5] *See "A 'Mockingbird' Reopens in Alabama, and Drama Plays Out,* The New York Times, April 17, 2016, *available at:* https://www.nytimes.com/2016/04/18/books/a-mockingbird-reopens-in-alabama-and-drama-plays-out.html.

## A.   The Southern District of New York is a Proper Alternative Forum.

The determination of a proper forum where the action "might have been brought" requires venue to be proper in the transferee forum and for defendant to be subject to personal jurisdiction. *See Nelson v. Brown-Service Ins. Co.*, CA 97-0471-P-C, 1997 U.S. Dist. LEXIS 12413, at *4-5 (S.D. Ala. June 18, 1997).

Personal jurisdiction exists in the Southern District of New York because Rudinplay maintains it principal place of business in New York, New York.   Conversely, personal jurisdiction over Rudinplay in Alabama is lacking. *See supra*, at 8-18.   The transfer of this case from Alabama, a forum lacking sufficient contacts with Rudinplay to establish personal jurisdiction, to the Southern District of New York, a forum that undoubtedly has personal jurisdiction over Rudinplay, would be in the interests of both judicial economy and justice.

Moreover, venue properly lies in the Southern District of New York under 28 U.S.C. § 1391(b).   Pursuant to 28 U.S.C. § 1391(b)(1), a diversity action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"   A defendant corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).   Rudinplay maintains its principal place of business in New York and is undoubtedly subject to personal jurisdiction in the Southern District of New York.

Venue is also proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C.§ 1391(b)(2).   This case concerns a live stage adaptation of the Novel, produced by a New York-based theater production company, pursuant to an Agreement negotiated largely in New York. The Play—the actual subject of the Agreement between the parties—will be developed, produced, and rehearsed in New York and

performed primarily on Broadway in New York. For this additional reason, the Southern District of New York is a proper venue under the statute.

## B. Transfer to the Southern District of New York Would Promote Justice and Convenience.

After determining that a movant has successfully established personal jurisdiction and venue in the transferee forum, a court must then determine "whether the balance of justice and convenience favors transfer." *First Fin. Bank*, 2009 U.S. Dist. LEXIS 37885, at *5. As part of this process, courts consider the following relevant factors: "(1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Id.* at *6 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). An evaluation of these factors demonstrates that, on balance, the factors strongly militate in favor of transferring this matter from the Southern District of Alabama to the Southern District of New York.

### 1.   The "Efficiency" and "Interest of Justice" Factors.

The "efficiency" and "interest of justice" factors—which include the locus of operative facts, the forum's familiarity with governing law, the weight accorded to plaintiff's choice of forum, and trial efficiency and the interests of justice—clearly favor a transfer to the Southern District of New York. Almost all of the "operative facts" underlying Plaintiff's Amended Complaint occurred outside of Alabama, namely: (i) the negotiation of the Agreement, conducted exclusively between Rudinplay's agents in New York and Ms. Lee's representatives

in New York and London; (ii) the drafting of the Play's script, which took place primarily in Los Angeles, California; and (iii) the development, production, rehearsal, and performance of the Play itself, which has and will take place almost entirely in New York. To the extent there is a locus for the operative facts of this case, it undoubtedly lies in New York. Plaintiff cannot seriously dispute that the core events underlying her Amended Complaint occurred in and emanated from New York and involve primarily New York entities or persons. At minimum, she cannot claim that Alabama is the locus of these facts.

Moreover, although a plaintiff's choice of forum is normally accorded deference, "[w]here none of the conduct complained of took place in the forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining whether to transfer an action." *Johnston v. Foster-Wheeler Constructors*, 158 F.R.D. 496, 505 (M.D. Ala. 1994); *see Lasalle*, 274 F. Supp. at 1302; *Patel v. Howard Johnson Franchise Sys.*, 928 F. Supp. 1099, 1101 (M.D. Ala. 1996). It is certainly the case that none, or virtually none, "of the conduct complained of" took place in Alabama. Plaintiff's choice of forum is therefore accorded far less weight.

The remaining factors—the forum's familiarity with governing law and the interests of justice—also weigh in favor of transfer. As explained *supra* at 14, the Agreement contains a choice-of-law provision in which the parties agreed that New York law would govern. Because a New York district court "would be more familiar with the governing law," the Southern District of New York is a far more efficient and appropriate venue for this case to be heard than a court in Alabama. *Brigman v. Great Am. Opportunities, Inc.*, No. 11-00470-KD-B, 2012 U.S. Dist. LEXIS 9882, at *1 (S.D. Ala. Jan. 5, 2012); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness, too, in having the trial of a diversity case in a forum

that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.").

Finally, transfer would further the interests of justice because this Court cannot exercise personal jurisdiction over Rudinplay. *See supra* at 8-18. The absence of personal jurisdiction in Alabama once again dictates in favor of transfer to the Southern District of New York.

### 2. The "Convenience" Factors.

The convenience-based factors—*i.e.*, the convenience of the witnesses, the location of the relevant documents and the relative ease of access to sources of proof, the convenience of the parties, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties—also weigh in favor of a transfer.

"The convenience of witnesses is an important factor to consider." *Holmes v. Freightliner*, 237 F. Supp. 2d 690, 694 (M.D. Ala. 2002); *see Lasalle*, 274 F. Supp. at 1302. Here, the vast majority of relevant witnesses are in New York, including Mr. Rudin, Mr. O'Donnell (Ms. Lee's former attorney, who negotiated the Agreement), and Mr. Sorkin (who resides in both Los Angeles and New York).[6] While Plaintiff resides in Alabama, Plaintiff played no role in negotiating the Agreement and cannot offer any relevant testimony concerning the interpretation of the contractual provisions at issue. Given the distribution of the key parties and witnesses, on balance, the Southern District of New York is a much more convenient and cost-effective forum to gather these individuals than Alabama.

As for the location of relevant documents and the relative ease of access to sources of proof, there are few documents at issue in this case, and even fewer that would not already be in the possession of both the parties. Moreover, "[c]onsidering the relative ease of transporting and exchanging documents in today's world," this factor carries little weight in the transfer calculus.

---

[6] Mr. Nurnberg, Ms. Lee's literary agent who was involved in negotiating the Agreement, is in London.

*Wamstad v. Haley Constr., Inc.*, No. 09-0209-KD-B, 2009 U.S. Dist. LEXIS 55053, at *8-9 (S.D. Ala. June 29, 2009).

The remaining factors—the convenience of the parties, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties—do not militate in favor of either party and do not alter the ultimate balance in favor of transfer.

## CONCLUSION

Defendant respectfully requests that Plaintiff's Amended Complaint be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404, on the grounds that New York is a more convenient and appropriate forum and such transfer is in the interest of justice.

Respectfully Submitted,

Dated: April 9, 2018

*/s/ Harlan I. Prater, IV*
One of the Attorneys for Rudinplay, Inc.

**OF COUNSEL:**
Harlan I. Prater, IV
*hprater@lightfootlaw.com*
John G. Thompson, Jr.
*jthompson@lightfootlaw.com*
Jeffrey P. Doss
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 N. 20th St.
Birmingham, AL 35203
Telephone:     (205) 581-0700
Facsimile:     (205) 581-0799

**PRO HAC VICE PENDING:**
Jonathan Zavin
*jzavin@loeb.com*
Jonathan Neil Strauss
*jstrauss@loeb.com*
Sarah Schacter
*sschacter@loeb.com*
Sara Slavin
*sslavin@loeb.com*
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
Telephone:     (212) 407-4000

### CERTIFICATE OF SERVICE

I certify that on this <u>9th</u> day of <u>April</u>, <u>2018</u>, a true and correct copy of the foregoing *DEFENDANT RUDINPLAY, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE* was served on the following counsel of record by the electronic notification system of CM/ECF:

Matthew H. Lembke
Jeffrey M. Anderson
Ellen Presley Proctor
Bradley Arant Boult Cummings LLC
1819 Firth Avenue North
Birmingham, AL 35203-2119
Telephone:    (205) 521-8000
Facsimile:     (205) 521-8800


*/s/ Harlan I. Prater, IV*
OF COUNSEL