**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
RUDINPLAY, INC., :

        Plaintiff, :

    -against- :

TONJA B. CARTER and THE ESTATE OF :
NELLE HARPER LEE,
  :
        Defendants.
  :

-------------------------------------------------------X

No. 1:18-cv-03300

Hon. Analisa Torres

# SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND EXPEDITED RESOLUTION OF DECLARATORY JUDGMENT CLAIMS

LOEB & LOEB LLP
Jonathan Zavin
Jonathan Neil Strauss
Sarah Schacter
Sara A. Slavin
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |

I. The Prior Pending Action Doctrine Does Not Require that this Action be Stayed or Dismissed ...................................................................................................1

    A. Defendants Improperly Raced to the Southern District of Alabama Courthouse, in Violation of Their Contractual Obligation to First Discuss Their Purported "Concerns" with Rudinplay ..........................................2

    B. There is No Personal Jurisdiction Over Rudinplay in the Southern District of Alabama ......................................................................................5

    C. This Action Was Filed Shortly After the Alabama Action, and Allowing it to Go Forward Will Not Result in Judicial Inefficiency or Duplication of Efforts .................................................................................6

    D. The Balance of Convenience Factors Favor Allowing this Action to Proceed ..........................................................................................................8

II. Rudinplay Will Suffer Irreparable Harm if the Present Dispute is Not Resolved in the Immediate Future ...............................................................................................11

III. Rudinplay's Option Will Expire Between November 12, 2018 and May 12, 2019 ...............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991) ............................................................................................2

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................................1

*Bess v. Greyhound Lines, Inc.*,
    No. 89 Civ. 3680 (LLS), 1990 U.S. Dist. LEXIS 3731 (S.D.N.Y. Apr. 5,
    1990) ..............................................................................................................................9

*Capitol Records, Inc. v. Optical Recording Corp.*,
    810 F. Supp. 1350 (S.D.N.Y. 1992) ...............................................................................7

*Columbia Pictures Indus., Inc. v. Schneider*,
    435 F. Supp. 742 (S.D.N.Y. 1977) ............................................................................3, 5

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2006) ..........................................................................................2

*Don King Prods., Inc. v. Douglas*,
    735 F. Supp. 522 (S.D.N.Y. 1990) ................................................................................4

*Dornoch Ltd. v. PBM Holdings, Inc.*,
    666 F. Supp. 2d 366 (S.D.N.Y. 2009) ................................................................. 1, 4, 7

*First City Nat'l Bank & Trust Co. v. Simmons*,
    878 F.2d 76 (2d Cir. 1989) ............................................................................................1

*Girl Scouts of the United States v. Steir*,
    02-cv-4830 (KMW), 2003 U.S. Dist. LEXIS 24582 (S.D.N.Y. Aug. 29, 2003) ...........6

*Hanson PLC v. MGM*,
    932 F. Supp. 104 (S.D.N.Y. 1996) ................................................................................3

*Havas Worldwide N.Y. Inc. v. Lionsgate Entm't, Inc.*,
    15-cv-5018 (KBF), 2015 U.S. Dist. LEXIS 132050 (S.D.N.Y. Sept. 29, 2015) ............4

*Hines v. Overstock.com, Inc.*,
    668 F. Supp. 2d 363 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) ...........9

*Michael Miller Fabrics, LLC v. Studio Imps. Ltd.*,
    12 CV 3858, 2012 U.S. Dist. LEXIS 79424 (S.D.N.Y. June 7, 2012) ...................5, 6, 9

*Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*,
 804 F.2d 16 (2d Cir. 1986) ..................................................................................1

*Muller v. Walt Disney Prods.*,
 822 F. Supp. 1033 (S.D.N.Y. 1993)......................................................................5

*Raytheon Co. v. Nat'l Union Fire Ins. Co.*,
 306 F. Supp. 2d 346 (S.D.N.Y. 2004)...................................................................6

*Recoton Corp. v. Allsop, Inc.*,
 999 F. Supp. 574 (S.D.N.Y. 1998).....................................................................7, 8

*Reliance Ins. Co. v. Six Star, Inc.*,
 155 F. Supp. 2d 49 (S.D.N.Y. 2001).....................................................................8

*Riviera Trading Corp. v. Oakley, Inc.*,
 944 F. Supp. 1150 (S.D.N.Y. 1996)...................................................................4, 8

*Robeson v. Howard Univ.*,
 00 Civ. 7389 (GBD), 2002 U.S. Dist. LEXIS 1370 (S.D.N.Y. Jan. 28, 2002).........................3

Plaintiff Rudinplay, Inc. ("Rudinplay"), by and through its undersigned attorneys, Loeb & Loeb LLP, respectfully submits this memorandum of law in response to the Court's Order (Doc. No. 10) requiring supplemental briefing in connection with Rudinplay's motion for an order expediting discovery and scheduling an expedited trial of Rudinplay's declaratory judgment claims.

## I. The Prior Pending Action Doctrine Does Not Require that this Action be Stayed or Dismissed

In its Order, the Court required that Rudinplay "address[] whether this action should be dismissed or stayed under the prior pending action doctrine, in light of the action filed in the U.S. District Court for the Southern District of Alabama on March 13, 2018."

The "prior pending action," or "first-filed", rule provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986); *see also, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (first-filed rule "need not be applied where there is a 'showing of balance of convenience or special circumstances giving priority to the second [case].") (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). The rule "embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).

However, the presumption in favor of the first-filed lawsuit "is not to be applied in a 'rigid' or 'mechanical' way, and is quite commonly overcome where circumstances warrant." *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (internal citation

omitted). Ultimately, "[t]he decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion," *Adams v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991), and "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2006).

Here, both special circumstances and the balance of convenience counsel that this action should be permitted to go forward.

### A. Defendants Improperly Raced to the Southern District of Alabama Courthouse, in Violation of Their Contractual Obligation to First Discuss Their Purported "Concerns" with Rudinplay

The Agreement[1] provides that, if the Estate believes that the Play derogates or departs from the spirit of the Novel, or alters its characters, it is obligated to "give[] notice [to Rudinplay] as soon as possible," whereupon Rudinplay "will be afforded an opportunity to discuss with Owner resolutions of any such concerns." (Agreement ¶ 12). Accordingly, as explained in Rudinplay's initial memorandum of law, after Ms. Carter raised a litany of purported "objections" to the Play's script in her March 5 Letter, in its March 9 Letter Rudinplay requested that Ms. Carter meet with Rudinplay to discuss a potential resolution—as the Estate was contractually obligated to do:

> I want to make clear that Scott, and Rudinplay, want to work with the Estate of Harper Lee, as appropriate, regarding this project. In that regard Scott would be very happy to get together with you …. [W]e are eager to discuss the issues raised in good faith by the Estate and to have a dialogue about these issues…. [A]s I stated in the beginning, Scott would like to consult with you to discuss with you your concerns, and to see if it is possible to resolve at least some of them. Please let Scott know when it would be convenient for you to come to New York to meet with him. Giving the timing

---

[1] Defined terms in Rudinplay's initial memorandum of law ("Pl. Mem.", Doc. No. 11) are incorporated by reference herein.

2

> of the production of the Play, this meeting should certainly be sooner rather than later.

(*See* Pl. Mem. at 7-8; Rudin Decl. Ex. C at 1, 3).

The Estate did not respond to the March 9 Letter, or agree to meet with Rudinplay to discuss resolution of its purported concerns, as it was required to do under the Agreement. Instead, just two business days later, on March 13, 2018, Ms. Carter filed the Alabama Action on the Estate's behalf. (Pl. Mem. at 8).

According Defendants the benefit of the "first-filed" rule in these circumstances would run afoul of public policy favoring the informal resolution of disputes. In the oft-cited case *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977), the Court, facing similar circumstances, refused to apply the prior pending action doctrine, recognizing that "[u]nder the facts of this case, it would create disincentives to responsible litigation if [plaintiff] were allowed to prevent [defendants] from litigating in the forum of their choice by having won the race to the courthouse":

> [A]s federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by responsible discussions between reasonable people, be settled out of court. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing ….

*Id.* at 747; *see also Robeson v. Howard Univ.*, 00 Civ. 7389 (GBD), 2002 U.S. Dist. LEXIS 1370, at *6-7, 8 (S.D.N.Y. Jan. 28, 2002) (prior pending action did not apply where "[w]hile [defendant] was anticipating settlement discussions, [plaintiff] raced to the courthouse in an apparent attempt to benefit from the first-to file rule"); *Hanson PLC v. MGM*, 932 F. Supp. 104, 107-08 (S.D.N.Y. 1996) (dismissing first-filed action in where "allowing this action to proceed would discourage potential plaintiffs from initiating settlement discussions prior to filing suit….

3

[P]ublic policy favors settlement, and potential litigants must be encouraged to seek to avoid litigation rather than to adopt a 'sue first, talk later' philosophy") (internal citations omitted); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158-59 (S.D.N.Y. 1996) (disregarding first-filed rule where "[t]he policy of promoting the amicable settlement of disputes" weighed in favor of later-filed action) (citation omitted).

This policy is particularly apt here, as Ms. Carter filed her preemptive declaratory judgment complaint in breach of an *express contractual obligation* to attempt to resolve disputes with Rudinplay informally. *See Dornoch Ltd.*, 666 F. Supp. 2d at 371 (declining to dismiss second-filed complaint where, *inter alia*, defendant commenced initial action "notwithstanding the clear and mandatory agreement between the parties to litigate in New York"); *Don King Prods., Inc. v. Douglas*, 735 F. Supp. 522, 533 (S.D.N.Y. 1990) (first-filed rule inapplicable where Nevada plaintiffs breached promise to answer settlement offer). It would be perverse to reward Defendants for breaching their contractual obligations: "One need not express disapprobation of the tactics employed by [Defendant] to conclude that their conduct also is not deserving of reward," and application of the "first to file" rule would, upon these facts, "serve no salutory purpose …." *Id.* at 533. "'[T]he federal declaratory judgment is not a prize to the winner of a race to the courthouses'" and, particularly in the circumstances of this case, Defendants' "early arrival at the courthouse steps [should] not be rewarded with procedural advantage" and frustration of Rudinplay's efforts to obtain necessary, expedited relief in this Court. *Havas Worldwide N.Y. Inc. v. Lionsgate Entm't, Inc.*, 15-cv-5018 (KBF), 2015 U.S. Dist. LEXIS 132050, at *8 (S.D.N.Y. Sept. 29, 2015) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978)).[2]

---

[2] Rudinplay does not contend that the Alabama Action was an improper "anticipatory filing," which requires that the first-filed declaratory judgment action be "filed in response to a direct threat of litigation

### B. There is No Personal Jurisdiction Over Rudinplay in the Southern District of Alabama

As explained in Rudinplay's initial memorandum of law, it has filed a meritorious motion to dismiss the Alabama Action for lack of personal jurisdiction. (*See* Pl. Mem. at 9; Strauss Decl. Ex. J (Rudinplay's motion to dismiss the Alabama Action)). That personal jurisdiction over Rudinplay in the Alabama Action is lacking, or is at the very least in doubt, also counsels against application of the first-filed doctrine here. *See Muller v. Walt Disney Prods.*, 822 F. Supp. 1033, 1039 (S.D.N.Y. 1993) (declining to apply first-filed doctrine "where personal jurisdiction … is in doubt" and party "intend[ed] to move to dismiss" the first-filed action for lack of jurisdiction); *Columbia Pictures*, 435 F. Supp. at 748 (transferring first-filed action where there was a "substantial question" whether personal jurisdiction over defendant existed in New York).

Rudinplay acknowledges that, under ordinary circumstances, it might make sense to allow the Court in the first-filed action to rule on the jurisdictional question, before deciding whether the second-filed action should proceed. However, these are not ordinary circumstances. As explained in Rudinplay's initial memorandum (Pl. Mem. at 9-10), and as supplemented *infra* at 11, Rudinplay will suffer irreparable harm resulting from cancellation of the Play if this action does not proceed expeditiously. If this action is stayed, and the Court in the Alabama Action

---

that gives specific warnings as to deadlines and subsequent legal action." *Michael Miller Fabrics, LLC v. Studio Imps. Ltd.*, 12 CV 3858 (KMW) (JLC), 2012 U.S. Dist. LEXIS 79424, at *6-7 (S.D.N.Y. June 7, 2012) (quotation omitted). However, Ms. Carter's conduct in racing to the courthouse in contravention of express contractual obligations is at least as inappropriate, and undeserving of reward, as racing to the courthouse in response to a direct threat of litigation. In any case, an "anticipatory filing" is such an extreme example of a "special circumstance" that, where it occurs, a district court may disregard the first-filed rule without any further consideration of the equities. *See id.* at *4. Here, Ms. Carter's improper race to the courthouse is just one of numerous equitable reasons that the first-filed doctrine should be disregarded.

5

subsequently dismisses that action (or transfers it to this district), it will likely be a Pyrrhic victory for Rudinplay—the harm will have already been done.

Allowing the court in the first-filed action to resolve issues concerning whether that case should proceed is a "sound guideline," but one "that courts may nevertheless decline to follow where the wise administration of justice so requires." *Michael Miller Fabrics*, 2012 U.S. Dist. LEXIS 79424, at *11 (S.D.N.Y. June 7, 2012). "In some situations, the principle of sound judicial administration may dictate that the court adjudicating the second-filed action is the appropriate court to determine the proper forum." *Id.* at *12. Here, given that Rudinplay will suffer irreparable harm if the parties do not, at the very least, embark on immediate, expedited discovery, "principles of sound judicial administration" dictate that this action be allowed to proceed. *See id.* at *20 (enjoining first-filed action in favor of second-filed action, where further prosecution of first-filed action would result in irreparable harm).

### C. This Action Was Filed Shortly After the Alabama Action, and Allowing it to Go Forward Will Not Result in Judicial Inefficiency or Duplication of Efforts

Courts in this district have also held that "where the two actions were filed within a short span of time, the court may afford a diminished degree of deference to the forum of the first filing." *Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 352-54 (S.D.N.Y. 2004). This is because, in such circumstances, it is less likely that there will have been substantial progress in the first-filed action, and thus it is less likely that allowing the second-filed action to go forward will result in the type of "duplication of effort" the prior pending action doctrine is designed to prevent (*supra* at 1). *See Girl Scouts of the United States v. Steir*, 02-cv-4830 (KMW), 2003 U.S. Dist. LEXIS 24582, at *5 (S.D.N.Y. Aug. 29, 2003) ("Courts are more likely to allow a second-filed action to proceed if it was filed shortly after the first because, in such situations, judicial resources will not be wasted and neither party will be unduly

6

prejudiced."); *Dornoch Ltd.*, 666 F. Supp. 2d at 370-71 (declining to dismiss second-filed action where "only six days passed between the filing of the two actions, thus demonstrating that no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute here") (citation and quotation omitted); *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 576 (S.D.N.Y. 1998) ("The exceptions to the first filed doctrine include … the minimal difference in time between the filing of the two actions, and the lack of progress in either litigation."); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y. 1992) ("Only twenty days elapsed between the filing of the two complaints …. Therefore, no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute ….") (quotation omitted).

Here, Ms. Carter filed the initial complaint in the Alabama Action on March 13, 2018, and an amended complaint on April 6, 2018. (Strauss Decl. ¶¶ 5-6). Rudinplay filed the present action shortly thereafter, on April 16, 2018. Any minimal delay between the filing of the two actions was not the result of Rudinplay's sitting on its rights, but rather was the result of Rudinplay's continued efforts to discuss, and potentially resolve, the dispute informally, pursuant to the parties' Agreement. Specifically, even after Ms. Carter filed the Alabama Action, Rudinplay continued to seek to meet with her in order to discuss her concerns; the parties eventually participated in a teleconference on March 22, 2018 (a meeting that was originally supposed to take place in person, but was changed to a teleconference after the late-March blizzard rendered travel impossible). (*See* Zavin Decl. ¶ 5).[3] Thereafter, on April 3, 2018, Rudinplay sent Ms. Carter's attorney a revised script for the Play, in a final effort to resolve the matter (*id.* ¶ 6); Ms. Carter responded by filing her amended complaint three days later. After

---

[3] References to "Zavin Declaration" are to the Declaration of Jonathan Zavin dated April 23, 2018, submitted herewith.

7

that, Rudinplay moved expeditiously, filing its motion to dismiss the Alabama Action on the very next business day (Strauss Decl. ¶¶ 6-7), and commencing this action just a week later.

Because of the short time-frame between the filing of the two actions, there has been no material progress in the Alabama Action. *See Riviera*, 944 F. Supp. at 1158 ("lack of progress in either litigation" is a "special circumstance" warranting an exception to the first filed rule); *Recoton Corp.*, 999 F. Supp. at 576 (same). The only thing that has occurred in the Alabama Action is that Rudinplay has filed its motion to dismiss for lack of personal jurisdiction (or, alternatively, to transfer that action to this Court); the Estate's opposition to that motion, will be filed today, and Rudinplay's reply will be filed on April 30. (Zavin Decl. Ex. A). In light of this procedural posture, allowing this action to go forward will not result in any duplication of efforts or judicial inefficiency.

**D. The Balance of Convenience Factors Favor Allowing this Action to Proceed**

Even "[i]f there are no special circumstances justifying an exception to the first-filed rule, courts may still depart from the rule if the balance of convenience" weighs in favor of the second-filed action. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). The "balance of convenience" is determined by considering the same factors considered in connection with motions to transfer venue. A district court may exercise its discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice," and may consider, *inter alia*: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the

8

circumstances." *Michael Miller Fabrics*, 2012 U.S. Dist. LEXIS 79424, at *10 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002))).

Here, the *only* factor weighing in favor of the Southern District of Alabama action is the Estate's choice of forum, but any deference owed to the Estate's choice of forum is undermined by the Estate's conduct in inappropriately racing to the courthouse in contravention of its contractual obligations to attempt to resolve the dispute with Rudinplay. (*Supra* at 2-3). Deference to the Estate's choice of forum is also "seriously undermined by the factor that none of the conduct complained of in this action occurred in" Alabama. *Bess v. Greyhound Lines, Inc.*, No. 89 Civ. 3680 (LLS), 1990 U.S. Dist. LEXIS 3731, at *11 (S.D.N.Y. Apr. 5, 1990) (quotation omitted). As explained in Rudinplay's motion to dismiss the Alabama Action, almost all of the facts alleged in the Estate's amended complaint in that action occurred outside of Alabama, namely: (i) the negotiation of the Agreement, conducted exclusively between Rudinplay's agents in New York and Harper Lee's representatives in New York and London; (ii) the drafting of the Play's script, which took place primarily in Los Angeles, California; and (iii) the development, production, rehearsal and performance of the Play itself, which has and will take place almost entirely in New York. (Strauss Decl. Ex. at 5-7, 20-21; *see also* Zavin Decl. Ex. B (Declaration of Scott Rudin filed in Alabama Action), ¶¶ 9-18)).

For the same reasons, the "locus of operative facts" is New York—where the contract was negotiated and the Play is being developed and will be performed (ostensibly in violation of the Agreement)—not Alabama. *See Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 363, 369 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (for breach of contract claim, locus of operative facts considers "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred"). The "familiarity with the governing law"

9

factor also favors this forum, as the Agreement contains a New York choice-of-law provision. (Agreement ¶ 16).

Perhaps most significantly, the "ease of access to sources of proof" and "trial efficiency and the interests of justice" factors strongly favor a New York forum. As explained in Rudinplay's initial memorandum of law, determination of whether the Play impermissibly derogates or departs from the Novel, or alters its characters, will require the factfinder to view the Play itself, and not merely read its script. (Pl. Mem. at 15). All of the Play's major cast members reside or work in New York, not Alabama. (Parnes Decl. ¶ 18).[4] As a practical matter, the staging of the Play, which will be essential to resolution of this dispute, can only take place in this forum.

The remaining factors—the convenience of the witnesses, the convenience of the parties, the availability of process to compel attendance of unwilling witnesses, and the relative means of the parties—either favor New York or are, at worst, neutral. The relevant witnesses are in New York (including Mr. Rudin and Timothy O'Donnell, Harper Lee's former attorney who negotiated the Agreement) (Zavin Decl. Ex. B, ¶ 11), London (Andrew Nurnberg, Ms. Lee's literary agent who was also involved in negotiating the Agreement) (*id.*), and Los Angeles (Mr. Sorkin). While Ms. Carter resides in Alabama, she played no role in negotiating the Agreement and cannot offer any relevant testimony concerning the interpretation of the contractual provisions at issue.

The convenience of the parties, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties, do not militate in favor of either party.

---

[4] References to "Parnes Decl." are to the Declaration of Joey Parnes dated April 23, 2018, submitted herewith.

Overall, the ultimate balance of convenience strongly favors the Southern District of New York as the appropriate forum to resolve this dispute. Combined with the aforementioned "special circumstances," it is clear that, under the facts of this case, the equities require that this action not be stayed or dismissed pursuant to the prior pending action doctrine.

## II. Rudinplay Will Suffer Irreparable Harm if the Present Dispute is Not Resolved in the Immediate Future

In its Order, the Court also directed that Rudinplay provide supporting evidence of its assertion that "[i]f the present dispute is not resolved in the immediate future, Rudinplay will not be able to raise the necessary capitalization …, and the Play[] will be cancelled."

Accordingly, Rudinplay submits herewith the Declaration of Joey Parnes ("Parnes Decl."), an executive producer and general manager of the Play. Mr. Parnes sets forth, in detail, the challenges of capitalizing the Play in light of the cloud of uncertainty from the pending litigation (Parnes Decl. ¶¶ 11-14), the time constraints resulting from the Play's schedule, including ticket sales that would ordinarily commence at the beginning of May, 2018, a preview scheduled for November 1, 2018 and an official Opening Night scheduled for December 13, 2018 (*id.* ¶ 10), and the imminent loss of a theater and cast if Rudinplay cannot confirm, in the very near future, that the Play will proceed according to schedule (*id.* ¶¶ 15-19).

## III. Rudinplay's Option Will Expire Between November 12, 2018 and May 12, 2019

Finally, in its Order, the Court directed that Rudinplay set forth the date it believes that its right to exercise the Option to acquire live stage rights in the Novel will expire. While the precise expiration date may be subject to dispute, as set forth below, Rudinplay believes that its rights will expire between November 12, 2018 and May 12, 2019 (absent any judicial tolling resulting from this lawsuit). However, even if the latter date applies, as a practical matter, if the

11

Play is cancelled, it is very unlikely that Rudinplay will be able to arrange for a replacement theater by May 2019.

The Agreement provides that the initial term of the Option shall commence upon payment of the sum of $100,000, and shall continue for twenty-four (24) months thereafter. (Agreement ¶ 3(a)). This $100,000 payment was made on November 10, 2015 (Pl. Mem. at 4); thus, the initial term of the Option lasted until November 10, 2017.

The Agreement further provided that Rudinplay could extend the Option period by an additional twelve (12) months by paying an additional $50,000. (Agreement ¶ 3(a)). Rudinplay paid an additional $50,000 on September 11, 2017, thus extending the Option period to November 10, 2018. (Pl. Mem. at 4).

The Agreement also provides that the Option period will be extended by the number of days of performances of any workshop, regional theater or other developmental production. There have been two days of performances of developmental productions (*see* Parnes Decl. ¶ 10), extending the Option period to November 12, 2018.

Finally, the Agreement provides that the Option may be extended for up to an additional six (6) months to accommodate the availability of a star, director or theater. Rudinplay believes that, pursuant to this provision, Rudinplay is entitled to extend the Option period an until May 12, 2019. However, because Rudinplay currently has arranged for a theater to present the first paid public performance of the Play on November 1, 2018 (Parnes Decl. ¶ 10), the Estate may contend that, because a theater is currently available, Rudinplay is not entitled to any further extensions, even if the theater owner subsequently withdraws its commitment. Thus, the Option period will expire sometime between November 12, 2018 and May 12, 2019.

As explained in Mr. Parnes' Declaration, there are only 41 "Broadway" theaters currently operating in New York, all of which are in extremely high demand, and all of which are booked or committed for 2018. Thus, as a practical matter, even if Rudinplay has until May 12, 2019 to exercise its Option, if it loses its commitment from owner of the theater at which the Play is currently scheduled to premiere, it is extremely unlikely that Rudinplay will be able to arrange for a replacement theater within the extended Option period. (Parnes Decl. ¶ 16).

Dated: New York, New York
April 23, 2018

                LOEB & LOEB LLP

                By: *Jonathan Neil Strauss*
                    Jonathan Zavin
                    Jonathan Neil Strauss
                    Sarah Schacter
                    Sara Slavin
                    345 Park Avenue
                    New York, New York 10154-1895
                    (212) 407-4000

                  *Attorneys for Plaintiff*

16234213
227691-10003